## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TROY KING, on behalf of himself and other past and present employees similarly situated, ) ) ) ) Plaintiffs, ) ) vs. ) ) ASSET APPRAISAL SERVICES, INC. and MICHAEL COX, ) ) ) Defendants. ) | 8:05CV27<br><br>**MEMORANDUM AND ORDER** |

This matter is before the magistrate judge by consent of the parties on defendants' Motion for Summary Judgment [100] and plaintiff's response in opposition thereto [107]. This is a collective action under the Fair Labor Standards Act (FLSA). The plaintiffs were employed by the defendants (together, "AAS") as asset appraisers. They allege that, during their employment by AAS, they "routinely worked in excess of forty (40) hours per week without compensation," in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, and the defendants knew or showed reckless disregard for the fact that the failure to pay overtime violated the FLSA.

Defendants contend that the Motor Carrier Act ("MCA") exemption of the FLSA, *see* 29 U.S.C. § 213(b)(1); 49 U.S.C. §§ 31501 & 32502, applies to work performed by the plaintiffs. Consequently, the plaintiffs are not be entitled to overtime compensation for hours worked in excess of 40 per workweek.

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that summary judgment should be granted in favor of the defendants.

## I. FINDINGS OF FACT

I find that the following facts are uncontroverted[1] for purposes of this Motion for Summary Judgment and constitute the material facts upon which a resolution of these issues must be premised.

1. This complaint was filed on January 21, 2005 by Troy King, on his own behalf and on behalf of past and present AAS employees who served as asset appraisers.

2. King claimed that AAS had not paid its asset appraisers overtime compensation for hours worked in excess of 40 per workweek.

3. In January 2006 plaintiffs Barnett and Rupe were granted leave to join the lawsuit as class plaintiffs.

4. King, Barnett, and Rupe seek unpaid overtime compensation for hours allegedly worked in excess of 40 hours during various workweeks while they were asset appraisers employed with AAS.

---

[1] Plaintiffs "generally agree with defendants' Statement of Facts," but wish the court to consider additional facts, as set out in their brief (Filing 107). In reply (Filing 112), defendants indicate that they "take Plaintiffs' additional statement of facts as true."

5. An AAS asset appraiser inspects and records, through written data and pictures, the condition of heavy equipment and other machinery throughout the United States for purposes of establishing that machinery's value to its owner.

6. King, Barnett, and Rupe served as asset appraisers and performed these tasks.

7. King served as an AAS asset appraiser from November 2002 through July 2004.

8. Barnett served as an AAS asset appraiser from March 2001 to August 2004.

9. Rupe served as an AAS asset appraiser from June 2001 through May 2004.

10. In order to travel to an inspection site and perform an appraisal, King would use a company car, office keys, digital camera, computer, calipers, tire-tread depth gauge, inspection forms, tape measure, and master equipment keys.

11. All of the items listed in paragraph 10 were AAS property.

12. In order to travel to the inspection site and perform the appraisal, Barnett would use a company car, ECM reader (Palm Pilot), tape measure, tire gauge, inspection forms, and camera.

13. All of the items listed in paragraph 12 were AAS property.

14. In order to travel to the inspection site and perform the inspection, Rupe would use a company car, digital camera, inspection forms, battery jump pack, ECM reader, slim jim set, tape measures, depth gauge, keys, and calipers.

15. All of the items listed in paragraph 14 were AAS property.

16. During calendar year 2003, there were approximately 28 weeks in which King drove a company-owned car across state lines to appraise heavy construction equipment for the defendants. During the remaining 24 weeks of calendar year 2003, King did not drive across state lines to do appraising, and many of these weeks were spent by King in defendants' Omaha office doing data entry. King worked over 40 hours in these weeks without overtime compensation.

17. Plaintiff Rupe worked for defendants from June 2001 until April 30, 2004. During calendar year 2003 through April 30, 2004, Rupe spent almost all of his time in defendants' Omaha office. In calendar year 2003, there were eight weeks in which Rupe drove across state lines to do work for the defendants. In 2004, there were no weeks in which Rupe drove across state lines to do appraisal work for the defendants. Rupe worked over 40 hours per week in 2003 and 2004 without overtime compensation.

18. Plaintiff Barnett performed appraisals on a weekly basis, driving across state lines.

## II. LAW

**A.  Jurisdiction**

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331and 1367. Venue in this court is proper under 28 U.S.C. § 1391.

### B.  Summary Judgment Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997); NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential*

*Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)).  A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998).  In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' ... [i]t must show there is sufficient evidence to support a jury verdict in [its] favor."  *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998); *see* NECivR 56.1(b).

### C.  Legal Analysis

The FLSA provides that any employee who "is engaged in commerce or in the production of goods for commerce" shall be paid "not less than one and one-half times the regular rate at which he is employed" for every hour over forty hours he works in a workweek. 29 U.S.C. § 207.  This provision is subject to numerous exemptions; however, exemptions from the FLSA "are narrowly construed against employers and are to be withheld except as to persons 'plainly and unmistakably' within their terms and spirit."  *Musarra v. Digital Dish, Inc.*, Case No. C2-05-545, — F. Supp. 2d — , 2006 WL 2779856 (S.D. Ohio, Sept. 28, 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 462 (1997); and *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 295-96, (1959)). The employer bears the burden of proving that the exemption applies to the employees in question.  *Id.*

The MCA exemption covers "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the MCA, 49 U.S.C. § 31502]."  29 U.S.C. § 213(b)(1).  Under 49 U.S.C. §§ 13501[2] and 13502[3], the Secretary of Transportation may prescribe requirements for qualifications and maximum hours of service for "motor carriers"[4] and for "motor private carriers," "when needed to promote the safety of operations."  *See* 49 U.S.C. § 31502(b); *Morgan v. Francois*, No. 05-1796, 2006 WL 488439, 170 Fed. Appx. 978, 980 (8th Cir. 2006).

The legal issue presented in this motion is whether the plaintiffs were employees of a "motor private carrier."  That term is currently defined by statute as follows:

---

[2]49 U.S.C. § 13501 provides:

    The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier–
(1) between a place in–
- (A) a State and a place in another State;
- (B) a State and another place in the same State through another State;
- (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
- (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
- (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and

(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

[3]49 U.S.C. § 13502 pertains to transportation between Alaska and other states.

[4]The term "motor carrier" means "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation."  49 U.S.C. § 13102(14).  The parties agree that the plaintiffs did not perform their asset-appraisal work using commercial motor vehicles.

>(15) Motor private carrier.–The term "motor private carrier" means a person, other than a motor carrier, transporting property by *commercial motor vehicle* (as defined in section 31132[5]) when–
>>(A) the transportation is as provided in section 13501 of this title;
>>(B) the person is the owner, lessee, or bailee of the property being transported; and
>>(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15) (emphasis added).

The definition of "motor private carrier" quoted above became effective August 10, 2005, with the enactment of "the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users" (SAFETEA-LU). Pursuant to SAFETEA-LU, the definition of "motor private carrier" is now limited to the transportation of property using *commercial* motor vehicles. Prior to August 10, 2005[6], the MCA exemption applied to most employees who drove any type and size of motor vehicle in interstate commerce. *See Musarra v. Digital*

---

[5]49 U.S.C.A. § 31132(1) provides:

>[C]ommercial motor vehicle" means a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle–
>>(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>>(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;
>>(C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
>>(D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

[6]Prior to August 10, 2005, a motor private carrier "was statutorily defined as a person 'transporting property by motor vehicle when– (A) the transportation is as provided in section 13501; ... (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported ... to further a commercial enterprise.'" *Spears v. Preston Refrigeration Co., Inc.*, 205 F. Supp. 2d 1104, 1106 (D. Minn. 2002) (quoting 49 U.S.C. § 13102(13)).

*Dish, Inc.*, 2006 WL 2779856 at n.19. Due to the enactment of SAFETEA-LU, however, many vehicles that were previously exempt are no longer exempt because they are not "commercial" motor vehicles. *See id.*

Although the plaintiffs all ended their employment with AAS in 2004, they argue that the SAFETEA-LU amendments apply in this case and render AAS ineligible for the MCA exemption. The court, however, agrees with AAS that the legislation does not apply retroactively.

> Absent clear Congressional intent, a presumption exists that a statute does not operate retroactively. Retroactive application of a statute is improper if such application "would impair rights a party possessed when [the party] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

*Tillison v. Gregoire*, 424 F.3d 1093, 1098 n.4 (9th Cir. 2005). As to its amendments to the Motor Carrier Act,

> retroactive application of SAFETEA-LU is highly disfavored. *See Landgraf v. USA Film Prods.*, 411 U.S. 244, 280 (1994) ("If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result."); *Michigan Ass'n of Governmental Employees v. Michigan Dep't. of Corr.*, 992 F.2d 82, 84 (6th Cir. 1993) (noting that "the FLSA does not authorize retroactive rulemaking"). SAFETEA-LU does not include any language evincing Congressional intent to apply the amendment retroactively, and such a finding would result in confusion and unfairness as various individuals who until August 10, 2005 were exempt.

*Musarra v. Digital Dish, Inc.*, 2006 WL 2779856 at *8. *See also Dell'Orfrano v. IKON Office Solutions, Inc.*, No. 5:05CV245, 2006 WL 2523113 (M.D. Ga., Aug 29, 2006).

Retroactively applying the SAFETEA-LU amendments, which became effective over six months after this lawsuit was filed, would tend to increase AAS' liability for past conduct, or impose new duties with respect to transactions already completed.[7]

Plaintiffs further argue that Public Law 104-88, enacted in 1995 and codified at 49 U.S.C.A. § 13505(a), limits the general jurisdiction of the Department of Transportation (*see* 49 U.S.C. § 13501) so as to render AAS ineligible for the MCA exemption in this case. Section 13505(a) provides:

> (a)  In general.– Neither the Secretary nor the Board has jurisdiction under this part over the transportation of property by motor vehicle when–
> (1) the property is transported by a person engaged in a business other than transportation; and
> (2) the transportation is within the scope of, and furthers a primary business  (other than transportation) of the person.

Although there is existing authority that could be construed to support plaintiffs' position, i.e., *Mielke v. Laidlaw Transit, Inc.*, 102 F. Supp. 2d 988 (N.D. Ill. 2000), the argument has been rejected in the higher courts:

> Attempting to defeat the application of section 31502 of Title 49, [plaintiff] argues that under 49 U.S.C. § 13505 the Secretary of Transportation is deprived of jurisdiction over [defendant-employer] because [defendant's] "primary business" is wholesaling, rather than transportation.  The same argument has been presented to two other circuits;  both have rejected it. *See Klitzke v. Steiner*, 110 F.3d 1465, 1468 (9th Cir. 1997); *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 413 (3d Cir. 1992); *see also Carpenter v. Pennington Seed, Inc.*, 2002 WL 465176, *3-*4 (E.D. La. Mar. 26, 2002). We reject it also.

---

[7] I also note that the Eighth Circuit applied the pre-August 2005 version of the statute in *Morgan v. Francois*, No. 05-1796, 2006 WL 488439, 170 Fed. Appx. 978, 980 (8th Cir. 2006)

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 225 (2d Cir. 2002).  The court reasoned,

> [Plaintiff] is correct that § 13505 covers [Defendant], because [Defendant's] transportation is in furtherance of a primary business other than transportation– the beer and beverage wholesaling business.  But the remainder of [Plaintiff]'s argument falters.  On the basis of [Defendant's] involvement in another primary business other than transportation, § 13505 exempts it from the Secretary's jurisdiction, as specified "in this part, over transportation of property by motor vehicle." 49 U.S.C. § 13505 (emphasis added).  Section 13505 is a provision of Part B of Subtitle IV of Title 49, 49 U.S.C. §§ 13101-14914.  That Part contains provisions authorizing the DOT to enact registration and security (insurance and bonding) requirements for motor carriers, freight forwarders, and brokers.  See 49 U.S.C. § 13902 (registration requirements for motor carriers); § 13903 (registration requirements for freight forwarders);  § 13904 (registration requirements for brokers);  see also § 13906 (bonding and insurance requirements for motor carriers, freight forwarders, and brokers).
>
> Section 13505 has no bearing on the Secretary's power, as described in 29 U.S.C. § 213(b)(1), "to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Section 31502 falls under a different part of Title 49.  It falls in Part B of Subtitle VI relating to "Motor Vehicle and Driver Programs."  The fact that § 13505 denies the Secretary power to prescribe economic and licensing regulations of the sort covered in Subtitle IV, Part B, in no way contradicts the Secretary's authority, established in a different part of the Motor Carrier Act, to set qualifications and maximum hours of service for drivers to promote safety of operations.  That is the crucial inquiry under FLSA's § 213(b)(1), and, as shown above, [Defendant] satisfies those criteria.

300 F.3d at 226 (footnotes omitted).  After a comprehensive discussion of the legislative history and purpose of the MCA, the court concluded that "the Secretary of Transportation 'has power to establish qualifications and maximum hours of service pursuant to the

-11-

provisions of section 31502 of Title 49[.]'" 300 F.3d at 229.  I adopt that conclusion in this case.

To establish the applicability of the motor carrier exemption, AAS must show that: "(1) the Secretary of Transportation had the authority to establish the drivers' qualifications and maximum hours; (2) the drivers engaged in activities that directly affected the safe operation of motor vehicles on public highways; and (3) the drivers transported passengers or property on public highways in interstate commerce." *Chao v. Gary Bauerly, LLC,* No. Civ. 03-6200, 2005 WL 1656915 at *4 (D. Minn. 2005).  Considering the parties' uncontroverted facts in light of the applicable law, I find that the defendants have met this burden.

The court must also reject plaintiffs' final argument that they are entitled to overtime compensation for the weeks in which they did not travel interstate.  In this regard, the determining factor is not what percentage of the plaintiffs' duties affected the safety of operation but, rather, "whether any of [plaintiffs'] duties had a substantial effect on motor vehicle safety." *Yellow Transit Freight Lines, Inc. v. Balven*, 320 F.2d 495, 498 (8th Cir. 1963).  *Accord Spears v. Preston Refrigeration Co., Inc.*, 205 F. Supp. 2d at 1106; *see generally* 51B C.J.S. Labor Relations § 1203 (Westlaw, May 2006):  "[I]t is the character of the safety-affecting activities rather than the proportion of either the employee's time or of the employee's activities that is controlling.  In other words, the true determinant is whether or not the employee performs duties which substantially affect the safety of operation, rather

than whether the duties affecting safety are substantial. Thus the emphasis is placed on the effect of the duties on safety operation rather than the proportion of time spent in doing those duties." (Footnotes omitted).

In this case, the plaintiffs routinely used their vehicles on the public highways to complete the work that is the subject of this lawsuit. Their duties substantially affected the safety of operation of the motor vehicles, and the plaintiffs do not dispute that point.

For the reasons discussed above, the court finds that the defendants are exempt from compensating plaintiffs for overtime pursuant to the motor private carrier exception to the FLSA. The instant case presents no issues of material fact, and the defendants are entitled to judgment as a matter of law on all claims.

## ORDER

**IT IS ORDERED** that defendants' Motion for Summary Judgment [100] is granted in its entirety.

**DATED October 23, 2006.**

**BY THE COURT:**

**s/ F.A. Gossett
United States Magistrate Judge**